Good morning, Your Honors, and may it please the Court, Jocelyn Sperling for proposed interveners and appellants Ryan Hyams and Regine Duhon. I'd like to reserve three minutes for rebuttal and I'll watch the time. I'll try to. This appeal presents the question of whether the state of California's only proxy to prosecute certain poverty claims is entitled to mandatory intervention in an appellant's claims, but lack authority to do so. The Court should draw a bright-line rule based on the plain language of the PAGA statute that PAGA plaintiffs only have authority to settle claims they've specified in their PAGA notices. We filed a Rule 28J letter addressing the Uribe case by the California Court of Appeal, which adopted this rule. So under this rule, Hyams has a because he's the only proxy for what I'll call the Hyams-only claims. Those are the maximum work, the rest day and the sick day claims that the plaintiffs are attempting to settle. I think of those as the three claims that are arguably unnoticed. Correct. And so let me just probe this a little bit because I appreciate your rule and we know there's this split, but it seems to beg the question that the statute, let me just start, the statute requires notice be California Court has said many times that's a prerequisite, you've got to do that. And then in some cases, just hypothetically, just in some cases, that's the rub, right? Was the claim fairly noticed there or not? Correct. Right. Okay. And then if we're going to go with the one that's school of thought, then we have to look to see whether or not it really arises out of the same facts because the question is basically a race judicata claim conclusion sort of theory, right? Well, that's the theory that the Moniz court adopted, kind of a claim preclusion analysis. I think that your rebate has the better analysis because your rebate, the claim preclusion generally is when you're in the second lawsuit and Moniz is kind of applying a claim. I wasn't expecting your team to agree that that's the way to go. I'm just trying to conceptualize these are two different sort of schools of thought, right? And the only other thing I wanted to do and then I'll get out of your way is to just clarify that my understanding is that at the time that the district court ruled in this case, Moniz hadn't issued yet. Correct. That was the district court in your case ruled in July. They anticipated Moniz, but Moniz came out in November of that year, if that's right. Both Moniz and your rebate were after the district court's decision and in fact after the briefing in this appeal. Thank you. Go right ahead. Can you give us what's the status of all this litigation in California courts? So the Moniz and rebate cases are final. There's a case called Turrieta and the California Supreme Court has granted review on the question of whether when there are overlapping pocket cases, whether the pocket plaintiff from the other case has a right to intervene or to object or appear in some capacity. What Turrieta did not, what Turrieta declined to address because it hadn't been raised in the trial court, was the issue here if the proposed intervener is the only pocket plaintiff who's alleged some claims in their pocket notice and the named plaintiffs hadn't. So Turrieta and the California Supreme Court has not taken up that issue. So that's unique to this case. Is there any reason that we should not wait for Turrieta to come down from the California Supreme Court before deciding this case? Certainly would not object to a state pending Turrieta. There certainly may be information, you know, comments by the California Supreme Court that would weigh on this court's decision. The only thing I wanted to point out is that Turrieta is not going to address the specific issue here when the proposed intervener has noticed claims that the name plaintiffs had not noticed a claim that the proposed interveners had and the Court of Appeals said it's too late, you should have raised that argument below. We're not going to consider it and the California Supreme Court has not. That's not part of its question that it's on which it's granted review. I think that briefing is completed. It was completed as of last June in the California Supreme Court as a former member of the state Supreme Court. My antennas always start twitching when people tell me what the court can and can't, will not address so it's hard to know. But, and I think that we all agree on that. But that's the rub. The question is, in Turrieta, when people say that the prior claim was noticed, that can be fact-specific and we can measure that on a continuum, right? Because it can become a question of what is or is not fairly encompassed by the notice. That's the only point I wanted to make at the outset. I keep saying that we're going to get out of your way, but if you want to move back to your outline anytime, I promise, at least for my part, I'm done asking questions. I just wanted to respond to that point because I think it's undisputed here that the plaintiffs did not notice any facts or the claims in there. So, you know, the Himes-only claims are these non-wage claims that are kind of stand-alone POGA claims that don't have, for example, if a plaintiff has an overtime claim for damages, there's a corresponding POGA penalty for overtime, but these, you know, stand-alone, non-derivative Himes-only claims, these are the maximum, you know, work claims, the rest stay claims, and they don't have a corresponding underlying claim. So, that's really well. Okay, go right ahead. Sorry, so I could just clarify. So, even if Tereda affirms and says that a POGA, a competing POGA intervener doesn't have a protectable interest, then you're just going to say that doesn't matter because that only pertains to facts where they've provided notice to the LWD, L-D-W, is that right? LWD, yeah. Right, so I don't know, I guess what's the point of waiting then if you're saying it doesn't matter? Right, I mean, that was back to the point that I perhaps didn't articulate well, is that I think there may be something in the California Supreme Court's Tereda decision that may be helpful to the analysis, but ultimately is not going to decide that issue. And so, our position is that, you know, if the California Supreme Court and this court and Magadia and Alcantara said that, you know, it's a condition of suit to provide the notice, our position is, you know, there's nothing in law or logic that means that you can suddenly settle the claim if you never had authority to bring it in the first place. So, the authority, you know, lies with the state of California and it isn't until you actually notice the claim that the authority is transferred to the PAGA proxy. So, you know, argument just follows that that is the prerequisite to being able to settle the claim and that Tereda wouldn't answer that question. I think it's uncontested, do you want to continue? Sure. So, turning to the four requirements for mandatory intervention, just to go through each of those, they all really turn on this point about Hyams being the only proxy for the state. So, the district court, you know, just addressed the first significant protectable interest requirement and concluded that Hyams lacked a personal interest, but also kind of noted that the personal interest is separate from his interest as the proxy because the court talked about the Kim case. And so, you know, our position is that Hyams has the same legal rights and interest as the state, and the state, you know, had it brought a lawsuit based on Hyams' notice, it would have had a right to intervene. And so, our position is Hyams stands in the same shoes as the state. Does that argument mean that because he gets 25 cents on the dollar, he does have a personal protectable interest? No, actually, our argument doesn't turn on the penalties he would recover individually. Our argument turns on Hyams' standing in the shoes of the state as the state's proxy because he provided notice to the state, and so he has the same legal rights and interest as the state. So, we're not focused on his, you know, personal interest in the pocket penalties. But it is difficult because the statutory scheme allows folks to give notice, as you indicate, and I think it is uncontested. That is a prerequisite, but it also, there's a couple of different ways to get deputized, if you can let me use that word right. One way is the state really gives notice, but the other is that you just wait long enough. The state doesn't take action, and then the plaintiff goes forward. And so, you know, Moniz notes that Toretta presupposes that it's okay for more than one plaintiff to be going forward at the same time. You know, on what I'm going to call statutorily exhausted claims that have been noticed, you know, either way. And so, then there seems to be inherent in the statutory scheme that there could be these competitions, right? Right. And my position is that, or our position is that there certainly could be kind of a competition with competing overlapping claims if both plaintiffs notified the LWJ of all the same claims. Right. And that's the target. That's the black hole for the moment. If you just let me set that aside for a minute, because I think that is a question of what is or is not noticed, and what is or is not fairly read into that is going to be different for all kinds of different cases. Sometimes, you know, we have some cases where it's a non-slip shoe and a cell phone, and the court can easily say that one did not provide notice of the other. And then, in other situations, it gets to be, you know, sort of a closer call. Right. But my concern is if the statutory scheme is right, and both these cases seem to presuppose that, there could be what I'm calling competing claims in a state the size of California with as many courthouses and ongoing litigation, easy to imagine, that folks don't know about litigation pending in another place. And there's going to have to be a mechanism to determine the extent to which it is going to be permitted to bring in a claim from their perspective at the last minute. Right. And that strikes me as quintessentially a decision to be made by a California court. So I'm really concerned about that. I just want to make sure everybody is aware that I'm concerned about us drawing those lines. Your position is unchanged. Your position is that this was not, you know, it wasn't noticed. I fully appreciate that, but I think there's a bigger issue here. Well, the issue, and I think the California Supreme Court will touch on this issue of whether when they're completely overlapping claims, like to the extent to which, you know, a plaintiff can intervene to protect the state's interest. Because even in the amicus briefsum of which the court granted judicial notice, the LWB itself said, you know, we want our proxies to intervene because we don't have the resources and to protect our interests. And, you know, here, especially when claims are added at the last minute at settlement, I think there certainly, you know, is a concern about the court having the input from the, you know, the proxy in a different case. And as you know, our position is that this case is unique because Hines is the only one with authority. And we do think that your rebate, you know, properly reads the statutory language as this is a prerequisite. You have to notice the claim. If you don't, you can't settle. But, again, the facts in your rebate were really easy compared to this one, or to look at it compared to many as to whether they were. Yeah. I mean, I guess I would say that the facts are easy in this case, too, because there's absolutely. In your case. In our case, exactly. If everything makes that crystal clear, that's your position, yeah. Okay. Yes. And. We talked about the timeliness issue, so. I just wanted to note that my time is getting below three minutes, so. Okay. Great. So, my understanding is that you've learned about the, at least the Corberra-Chilean suit in January of 2019, but you didn't move to intervene until July of 2020. How is that not too late? Well, first, I would just note that the district court actually did not address timeliness. I'm happy to go into that a little bit more by reading the class decisions. Well, I'll just. The reason why I would say it's not too late is because the Hyams-only claims weren't added until settlement, and so Hyams. But why does that matter? Why it matters is because Hyams had no notice that the plaintiffs would actually add claims that they weren't deputized to pursue, and. But am I right that your claims overlap 100% with the Corberra claims, and they just added the last three at the last second? Yeah, our position is that they don't overlap with those claims. So, that's really where the difference is, that their claims are really wage claims, overtime, meal, and breast-break claims. These are completely stand-alone PAGA claims that involve mandatory maximums for work. But they're not deputized for PAGA claims as well? They did file a PAGA notice, but they didn't mention the statutes at issue at Labor Code 850, 851, 551, 552, 246. So, they didn't notify the CVS. They were also dismissed. Pardon? They were dismissed. Right. The district court granted summary judgment to CVS in September 2018. The district court granted summary judgment on the PAGA claim in the Corberra case, and the Tulane case hadn't had any PAGA claims. To begin with, there weren't any. Right, exactly. In the settlement agreement of March of 2020, March 2nd, on March 6th, Corberra dismisses his appeal of the PAGA claims. Right. And there's a hearing, and you both had different issues, different interpretations of what happened at the March 2020 hearing. And at the time you intervene, which I guess is the day after you got the settlement agreement, at that point, they're still not added to the amended complaint. The second amended complaint was filed a month later in July of 2020. That's right. If there was the day before the intervention motion, there might have been a note. I'm not sure if it's possible that the – and I apologize if you can look back at the notes – if the consolidated second amended complaint was filed the day before, you know, the intervention. But I think that might just be a notice to the court. Okay, so it was filed after. But at the time that there was notice of the settlement in March, it hadn't even been filed. So there was absence. That's my point. But you're not contesting, you know, as at that point, the second amended complaint didn't include pocket claims. But you're not contesting as of June 4th when you got the settlement agreement, you certainly realized there was a problem because the next day you moved to intervene. Exactly. So Judge Bumate is really looking at an earlier part of that timeline. Go ahead. There are pocket claims in the Chalang and Cabrera case before the settlement. That is correct. They overlap with your pocket claims. Well, our position is that they don't overlap. Why is that? So our position is they don't overlap because the pocket statute requires notice of the specific provisions of the code, and they hadn't listed the specific provisions of the code of the Hines-only claims. And they also didn't – I'm sorry, but there are other claims that they listed that overlap with your claims. Well, they listed, you know, off-the-clock training time that they didn't mention, and overtime that they didn't mention maximum, you know, the statutes governing maximum hours. Our claims were also on-the-clock work, where they were scheduled to work beyond the maximum hours, beyond the maximum days. But there was a substantial overlap in those claims. You would concede that. What claims were dismissed in September of 2018? Dismissed from the Cabrera. We didn't have to dismiss the Cabrera pocket claim. Right. The district court concluded that the plaintiffs didn't have authority to bring the pocket claim, and then that case was appealed at that point. Right, and eventually that appeal was dismissed. That appeal was eventually dismissed as part of the settlement. But the pocket statute requires not only facts and theories, it requires the specific provisions. And all of those, even if you were to say that the facts overlapped, and our position is they didn't, but all of those three, including the specific provisions of the code, are required as part of the mandatory notice for LWDA claims. So our position is even if the facts overlapped, that's still insufficient to meet because the LWDA needs to know of the specific labor code provisions. Well, over your time. Yes, thank you. That's okay. We'll give you two minutes when you come back. We took you over time, but for planning purposes, we'll give you two minutes when you come back. Thank you. Sure. We'll hear from opposing counsel, please. May it please the Court. I want to address the last issue, Roderick, which is the overlap. When they sought to intervene, they sought to intervene in both the class action and the pocket action. The claims overlapped substantially. They have a super broad complaint, and not only from the pharmacy employees, but every non-exempt employee in California. They knew about the case for more than a year. They didn't reach out to us. So you think, can we back up? You think they knew about the case as of? They filed a notice-related, sorry, CVS filed a notice-related case in the Himes action, which they disputed before their district court. They said the cases weren't related because their cases were broader. But we both have mail-and-rest period claims for pharmacists. In fact, the Cabrera case has several theories under this. There was off-the-clock. There was a reimbursement claim. Is it your position that district court reached timeliness? It is. Can you give me the ER site where you think the district court reached timeliness? Sure. Actually, I have the email here. Sure. But I want to get back to my impression was that the district court did not explain why it was exercising discretion to rule on the timeliness issue. Well, it said that it would prejudice. I'm also very interested in seeing the exact words. Sure. You can rely on it. He indicated that this would be prejudicial given the procedural posture, that it would undo the settlement and also force us to litigate their much broader, more unwieldy case on behalf of the entire non-exempt workforce of California. I have an additional concern about timeliness that I'd like to address, and that is I kind of wonder whether anything is untimely if it's before class certification. I mean, the first step in a class action is certifying a class, and when a class has not been certified and the settlement comes first, that's one of the traditional signposts of a collusive settlement that ought to be Understood, and I would rely on the authority from this court, Air California case, Smith v. March, cases that recognize that when there is a class action case and there's substantial overlap, there may be a settlement reached at some point that's not going to be to the liking of the other side. We're a federal court, and I don't think we're bound by a procedural decision of the California court. These are two Ninth Circuit cases, Smith v. March, and the Air California case are Ninth Circuit case, which recognize that when you become aware of another class action, sitting back and waiting for settlement is too late. You think they sat back and waited for settlement? Is that your position, counsel? It is. They knew about our case. They never reached out. They actually argued that their case wasn't related, even though there was substantial overlap. They never reached out? Never reached out. Am I misunderstanding that there's this, if you're going to go there, let's talk about the March 31 hearing then. There's this question about, I think that you've both briefed your respective positions. Closing counsel has a declaration about what was happening at that hearing and the representation about whether there's a settlement of what they did or did not implicate. Do you want to respond to that? I'm not sure. I'd like to respond to counsel's declaration regarding that March 31 hearing. I'm sorry, what was the particular point that you wanted me to respond to? To know if you'd like to respond to the declaration. If you don't, that's fine. I'm just giving you an opportunity to do so. I'm not sure what counsel's declaration says in that hearing. That's why I'm not. There's a representation to the magistrate judge by CVS of a person so into opposing counsel that there are no settlement agreements that impact the HIAMS claims. Yeah, I wasn't part of that hearing, so I don't know much about that. That would best be addressed by CVS's counsel. I'm just responding to your point that there was never anybody, that no one had ever reached out and there hadn't been a discovery request. But if opposing co-counsel wants to mention it or refer to this, that's fine too. Yeah. I was telling this counsel that we were unaware of your action. I've got another question that we already have addressed. I guess it's two parts. Number one, I don't actually see why it was incumbent on them to reach out. Why shouldn't you have to reach out? The second thing, you weren't aware of the public request? I wasn't aware of it. I would have reached out. The whole reason we teamed up with Provera. The second part of my question is we have a case, Carpenter, I think the name was. It was an environmental case, and it was about building a road. And whoever was responsible for building the road and the federal government agreed on settlement. And then an environmental advocacy group came in right at the last minute and said, wait a minute, we're not part of this settlement, and our interest is different. And we held that the environmental advocacy group was entitled, despite its coming in at the last minute when a settlement had been reached, to intervene. What's the difference between that case and this one? I think there's a difference when a policymaking branch of the government has taken a position and changes it at the last minute. In that case, it's fair to someone to intervene at the time of settlement. I think that was the ground, was it, in Carpenter? The only exceptions I'm aware to coming in at the end of all involved government agencies who at one point have taken one legal position, and that's changed at the time of settlement. I'm not sure I made my question clear. Was that the ground on which we allowed the so-called last-minute intervention in Carpenter? No, it wasn't. They didn't specify that, but I think there is a difference. Like between the Smith v. March cases, the Air California cases, where they say, if you know about other class action, don't wait for settlement. And then you have these government branches case, right, an actual policymaking government. It mattered. I think the argument was by the environmental advocacy group, we expected the government to take the same concerns or to share the same concerns we had. And then it turned out they were settling and were not sharing our concerns as they thought, as we thought they would. But it wasn't about, hey, they changed their position. Well, I think, again, the difference is in Pagan class actions, where there are proxies representing the state of California, there's always going to be disagreements about what the proper settlement amount should be. That is inherent in these cases. And that's why the rulings of the previous mention of NYCHA was, get in there earlier. Make a deal. Do something. But don't wait to settlement. Because I may see the case one way. I saw this as an extremely challenging case. They see it a different way. We can't account for their views if they don't come in earlier and make that clear. And in this case, the rule we adopt is you can wait until settlement to do this. Then everyone's just going to sit back and wait until settlement. They haven't done this. Wait a minute. So your settlement was reached in November of 2019. Is that right? That is correct. Okay. In principle, the law and form agreements still needed to be worked out. And that wasn't signed until March. And it was delivered to HIEM's counsel in June. I believe that's when CVS delivered it. Correct. I believe, was it June or March? Again, Mr. Boudreau from CVS can give those exact details. Because that's another case with another set of CVS counsel. And I'm not privy to all those facts. All right. I'm just trying to get the timeline straightened out. Because it seems to me that there's many months in that interval. So you should probably be aware of where we're coming from. Go right ahead. I just want to make the last point before I turn it over, which is. So in response to your opposing counsel's argument, that your PACA claims did not cite the same labor code provisions that they did. And so there was no overlap. So the original PACA notices do not cite those claims. But we did provide an amended complaint to the LWDA, which did include those claims that was long before the final approval hearing. When was that? It was about six months before the final approval hearing, I believe. It was in June of 2020. We provided a second amended complaint, which is not required in the statute. Wait. In June of 2020? That's one month before they sought to intervene. Sorry. The amended complaint might have been July, July 2020. That's when the court approved the filing of a second amended consolidated complaint. That had the PACA claims. We provided that to the LWDA. Right. So what I have on my timeline is that on June 4th, CVS sent a copy. CVS sent a copy of the HIEMS settlement agreement. Sorry. Settlement agreement to HIEMS on June 5th. HIEMS sought to intervene. And on July 3rd, the second amended complaint was filed. And that included the three, what I'm calling the three HIEMS PACA claims. That's the timeline I have. But you're in agreement with your opposing counsel that your initial notice to LWT did not include the same labor code provisions that they did. They had all the facts. There is but those three claims. Okay. Was there any overlap in claims? Oh, there's a tremendous amount of overlap. The meal and rest period stuff, the off-the-clock claims, the cell phone reimbursement. They were all there. Are they the same provisions that they did? Correct. It's just the three that you did not cover? Correct. Okay. Last point I want to make is Callahan, that this court decided, Callahan v. Brookdale Senior Living Communities, on the inadequate representation prong, addressed the very issue that the plaintiffs in that case or the settling parties did not include certain PACA claims when they settled their case in a notice prior to that. And this court said that doesn't go to the inadequate factor. Right? It's not something that they considered as showing the compelling showing they needed to show that our representation was inadequate. You're well over time. Okay. Thank you for your patience with our questions coming right on up. Thank you. Good morning. Good morning. I'm Craig Clark, and I want to make sure that I don't impose on you. Madam Clerk, if you could put two more minutes on the clocks, another seven minutes. Go right ahead. You were just discussing the overlap of the original PACA claims, and also there were some questions earlier about the Kim B. Raines situation that occurred in the Cabrera case, where the Cabrera case, the PACA action was a summary judgment was granted by the trial court. Well, what happened in that circumstance? We had PACA claims in the Cabrera case, and we also had the regular class action type claims in that case. At the time, Kim B. Raines came down out of the appellate court in California. And in the Kim B. Raines case, they had settled their individual claims, and yet tried to continue with the PACA claims. And the court said, no, you don't have those claims anymore. You've settled them. What we had done in our case is similar to that. We had dismissed the individual claims, not settled them, but we dismissed the individual claims because the only one to go forward was PACA claims. There was an arbitration clause in place for the class action claims, and the judge enforced that arbitration clause after CBS moved for the judge to do so. The briefing explains this in detail, but go right ahead. So, at any rate, we did have the PACA claims in place, and the judge granted the summary judgment because of the ruling in Kim B. Raines, and Kim B. Raines changed when it went to the Supreme Court. Right. But we always had those PACA claims in place. They were dismissed, right? No, the PACA claims, the court granted summary judgment on them. We didn't dismiss them. Well, let me rephrase it. I mean, yes, but I mean, we did. We voluntarily dismissed the- But that's the only thing, isn't it, which imposing counsel is supposed to be clairvoyant and anticipate this, what I think is uncontested. No, Your Honor, thank you. What we dismissed voluntarily were the class action claims. We kept the PACA claims. The PACA claims are the ones that were contested. Right. And that was the whole thing that was at issue. We also, and this is in the briefings, and I'm sure you're aware of this, we also continued to have new plaintiffs. In fact, even we had sent a draft complaint to CVS with a brand-new plaintiff who we were absolutely positive did not have an arbitration clause in place in order to preserve those PACA claims, and that was pending when this whole thing happened and we settled the case. And all of this goes to what? Is it your, this is where I'm trying to get at, what is a workable rule? Where does it end? If the notice is that they were supposed to be monitoring this litigation and anticipating what exactly? Well, we know that they were, in fact, monitoring this litigation. What did they miss? What were they supposed to have anticipated? I don't understand this delay, counsel, just to get cut to the chase, that the settlement was reached, at least tentatively, in November of 2019. Yes. They didn't get it until June. Imposing counsel says nobody reached out to them. It's quite a delay here. We were unaware that they even were on the playing field. We did not know when we settled the case that they had filed a case. We were unaware of it, completely unaware of it. CVS, we had been aware of it. CVS is on both sides of that, okay. That's correct. But we were unaware of it. The interesting thing was they were definitely aware of our case. There had been a motion in their court to deem the cases as related, and they opposed that motion. So they were aware of our case. They did not reach out to us, stayed in the background, and litigated their case without saying a word to us when we settled our case. Staying in the background, I'm having trouble with that, sir. Because CVS is on both sides, it's defending both. Yes. Were you at the March 31 hearing? Yes. And did you want to respond to the declaration of opposing counsel on that one? Again, like Mr. Morrison, I'm not really aware of exactly what declaration you're referring to. Okay. That's fair enough. Fair enough. There's three minutes left. Do you want to wrap up? Sure. The issue of whether or not the issue that we've been talking about here is whether we expanded the PAGA claims and whether the PAGA claims that they had filed them, these two, 551 and 552, 851, 852, those three claims, all with the underlying facts for those claims were always in our case. We did not specifically elucidate those named statutes in our PAGA notice, but all of the underlying facts were there. And this Court has held repeatedly, over and over again, the expanding claims as long as they arise from the same operative facts and as long as they don't expand the claim and that it is acceptable to settle those claims as long as they don't change the underlying facts of the case. One view of this case is that the only person who actually owned a PAGA claim is Hyams. I think that was his name, Hyams. And then out of left field, here come these other parties settling the claim that only Hyams can bring, and the parties that are settling his claim wouldn't even have authority to bring his claim. They're really out of left field that way. That kind of looks like, well, in Harvey v. Morgan Stanley, that happened. The claims were expanded for settlement purposes. The Court found that that was acceptable. There are certainly circumstances where it's perfectly appropriate. For example, if you're settling a claim between parties where the plaintiff has the authority to bring the claim and the defendant chooses to settle the claim, and then in the release, it's all claims of any kind from the beginning of time to the present day, including but not limited to, and then a bunch of claims that were never in the complaint, but they're between the same people about the same incident. But it's altogether different if, well, one guy has a car accident and that someone else purports to settle this claim with whoever hit him. Your Honor, I understand what you're saying. However, this issue of expanding PAGA claims slightly, as long as they arise from the same set of operative facts, the exact same set of operative facts, is something that has gone on over and over and over again in this Court. It happened in Harvey B. Morgan's family. It happened in Saccio v. Peck. It happened in Tourette v. Lift. It happened in Callahan v. Brookstone. Do you have a position that in each of those claims there wasn't any reference to the statutory sex, the particular labor code? Because I can't tell that from the opinion. There were no PAGA. There was no request. There was no PAGA notice, preliminary PAGA notice, in any of those cases for those claims. And each of those cases using some language, such as they incorporated each of the allegations in the consolidated complaint. And in the case of Saccio, failure to exhaust allegations in the consolidated, a failure to exhaust administrative remedies under PAGA is an affirmative defense and not a prerequisite to standing. Tourette v. Lift says the same kind of thing. The first file. That's what we've heard here significantly over your time. Okay. And we've got all of those cases here. We've read all of them. Yes, you do. But is there anything else you want to add? Because I'm only going to put two minutes on this. Not on this issue, Your Honor. Thank you. You bet. Counsel, you're going to have to be quick. I will try, Your Honor. Good morning. May it please the Court. James McGrow, Greenberg Chartered for the Defendant Appellees, CPS, and Fifties. Let me start by first trying to answer your question about the march. Thank you. I was going to say you must be the guy who was in the march. My first case, not handled by myself. I was not present at that hearing. Other CVS counsels representing them were present at that hearing. At some point, the CVS counsels have to talk to each other because, honestly, the notion that CVS was out of the loop and didn't know, that's not going to, I do not find it very successful. I don't think you're saying CVS was out of the loop. Well, actually, I'm going to differ with you. But go right ahead because now you only have a minute. The issue, I mean, the transcript is there. Yes. I want to just hit on the timeline. The transcript is there. And so can you go back to the settlement agreement was in November of 2019 and HIAMS counsel received it in June of 2020. No, the term sheet, for lack of a better term, was reached in November of 19. The settlement agreement wasn't signed until the very end of February 1st of March. February 1st of March of 2020, and it was received by HIAMS counsel June 4th. The actual physical settlement agreement may have been received. I don't know the precise date when HIAMS counsel, I don't have a reason to dispute that was the date they received it. There were several other telltale signs that this case had settled. One, as part of the settlement, because in early March, the processes went into place to sort of line the case up and consolidate it for settlement. The Ninth Circuit cases where appeals were dismissed, noting they'd been settled. The Cabrera case, noting it had been settled with the request for transfer to this court. So early in March, everybody knew, anybody that was watching the dockets knew the case had settled. So you're saying they should have intervened by March of 2020? I'm saying that they should have intervened sooner than they could because they knew this was always a prospect. I want to go to this idea about timing. If they intervened in March of 2020, the claims wouldn't have been there, right? The three that we're talking about today weren't added until July of 2020. Well, June, actually, there was a stipulation that was filed to amend, that was initially denied on some technical grounds, and it was refiled, and then it ultimately approved the filing in July. The point is the settlement agreement laid out everything that was happening. It laid out the release. You know, the filing of the Second Amendment consolidated complaint just reflected what was already in the settlement agreement. But going to the timeline, I think what's important to hear from the judge's perspective and the district court's perspective, and is that although he didn't say timeliness in his order, he did address two of the three problems that are traditionally looked at. You're out of time, but I was trying to get the ER site. I asked for the ER site where it was the strongest indication that the district court relied on timeliness, and it is. It's the third page of the order. Okay. Thank you for your argument. Thank you. I got that. Go right ahead. Thank you. Just quickly on the district court discussing the delay in prejudice, on ER 4, in the context of permissive intervention, the court mentioned that delay and prejudice are part of that analysis. So it was in that context, permissive intervention, not in the context of timeliness. And in ER 6, the last line is, accordingly neither intervention as of right nor permissive intervention is justified here. And just several lines before, the district court says, to a certainty this would derail the settlement and delay resolution of this nearly four-year-old case indefinitely. Prejudice to existing parties is not justified under these circumstances. So why is that not addressing timeliness? Because the issue of delay and prejudice under the timeliness inquiry relates to when a party knew or should have known that their rights aren't being adequately protected. Our point is that it wasn't until the June 4th notice of the settlement where Himes Council actually received the settlement that they actually finally knew or should have known that there were depraveds who were being adversely affected. But you don't take into account the prejudice to the existing parties? No. And it is the, I can get to that, the Smith versus March. There are a few cases in our timeliness analysis where in our reply brief where we explain that the prejudice analysis isn't just prejudice to the parties. It's actually when someone knew their rights, you know, that they weren't being adequately protected. But you're saying you don't take into account prejudice to the parties at all? That is not part of the inquiry for timeliness. That's part of the inquiry for the permissive intervention, not for the timeliness factor. So that's part of the Rule 24b-3, and that's on ER-4 where the court is discussing permissive intervention. But you would agree, based off of the final sentence of the opinion, that that whole analysis applies to both mandatory and permissive intervention? No. Actually, our position is that the court's analysis as to mandatory intervention is only on ER-4 discussion. A, the high-end plaintiffs have no significant protectable interest. Absolutely. I think that sentence probably should have been separated from A and B, and that was a summary of the court's entire analysis. But even if the court was talking about prejudice to the parties, that's actually not this court's time. The way this court talks about prejudice in the context of timeliness, it's a different type of prejudice. It's the prejudice of when you knew your rights, weren't being adequately represented by the plaintiff, and did you delay after that. So that's the important point for timeliness. I know I'm well over time. I just wanted to add a few quick points. Callahan expressly didn't address the situation here where the proposed intervener was the only proxy. Harvey, the unpublished decision, also didn't address this issue at all. Charietta, again, as I said, there was a footnote. The issue had been forfeited. Ciccio didn't address it. So none of these cases other than Uribe and Moniz actually addressed the issue before the court. If there are no further questions, I think those are the final points I wanted to make. Thank you. It doesn't look like there are additional questions. We appreciate all of your arguments, and we'll go on to the next case on the calendar.
judges: KLEINFELD, CHRISTEN, BUMATAY